UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHRIS COLOGNE AND** | * | **CIVIL ACTION** |
| **CATHERINE COLOGNE** | * | |
| | * | **NO. 12-735** |
| **VERSUS** | * | |
| | * | **SECTION "L" (3)** |
| **SHELL OIL COMPANY, ET AL.** | * | |

## ORDER AND REASONS

Before the Court is Defendant Texaco Downstream Properties, Inc.'s Motion for Partial Summary Judgment. (Rec. Doc. 101). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I.  Background

This case arises out of Plaintiff Chris Cologne's alleged exposure to benzene and benzene-containing substances while he was employed by Texaco, Inc. From 1970 until 1999, Cologne worked for Texaco, Inc. or other Texaco entities. (Rec. Doc. 101-1 at 2 (citing Rec. Doc. 101-3 at 13)). The present case only deals with his work for Texaco from 1970 to 1976. According to Cologne, during that time, "he repaired leaking equipment and flowlines for crude oil, produced water, and liquid gas condensate collection systems on and [sic] daily basis. He repaired pumps for crude oil and produced water, as well as repaired leaks in tank farms, pipes, and tanks." (Rec. Doc. 1 at 6). In his complaint, Cologne alleged that while working for Texaco during this time, he was exposed to radiation in the form of Technologically Enhanced Radioactive Material ("TERM"). (Rec. Doc. 1 at 6). Further, Cologne alleges that he was exposed to crude oil and benzene and/or benzene-containing substances. (Rec. Doc. 1 at 6).

On March 16, 2012, Cologne and his daughter Catherine Cologne, filed a complaint

1

against several defendants, including Defendant Texaco Downstream Properties, Inc. ("TDPI").[1] (Rec. Doc. 1). In the Complaint, Cologne alleges that his exposure to harmful substances was caused by "the acts or omissions of the Texaco's deceased Executive Officers, Lott Gosolan [sic] - superintendent Paridis Field, Red Nugent - Assistant Superintendent of Paradis field, Douglas Mathern - supervisor, and other unknown Executive Officers." (Rec. Doc. 1 at 7). Cologne has developed non-Hodgkin's lymphoma, which he alleges was caused by his exposure to the harmful substances. According to Cologne, he has suffered severe physical and mental pain, disability, medical expenses, and loss of enjoyment of life, all as a result of the exposure to benzene. (Rec. Doc. 1 at 8). Cologne contends that the executive officers knew about the causal relationship between benzene and cancer related illnesses but chose to conceal that information. (Rec. Doc. 1 at 10).

TDPI filed an Answer (Rec. Doc. 37), on May 7, 2012. On June 15, 2012, the claims of Catherine Cologne were dismissed without prejudice. (Rec. Doc. 41). Cologne's claims against the other Defendants have also been dismissed. (Rec. Docs. 32, 41, 43, 46, 53, 62, 89). The only claims that remain in this case are the claims made by Cologne against TDPI.

Cologne asserts three causes of action against TDPI for the conduct of its executive officers: 1) negligence under Article 2315 of the Louisiana Civil Code; (ii) strict liability under Article 2317 of the Louisiana Civil Code; and (iii) a claim for "concealment, misrepresentation, fraud." (Rec. Doc. 1 at 12-17).

---

[1] Cologne named "Texaco, Inc." as a defendant in his complaint. Texaco Downstream Properties, Inc. filed an answer (Rec. Doc. 37), in which it corrected Cologne's misidentification of Texaco, Inc. as the defendant.

**II.     Present Motion**

On June 11, 2013, TDPI filed a Motion for Partial Summary Judgment. (Rec. Doc. 101). First, TDPI argues that Cologne has abandoned certain claims that he made in his complaint, namely the theories of liability based on exposure to radiation and welding fumes. In order to narrow the issues before the Court, TDPI asks the Court to grant partial summary judgment as to those two theories of causation. (Rec. Doc. 101-1 at 4). Second, TDPI argues that it is entitled to summary judgment on Cologne's strict liability claim. TDPI claims that this cause of action is barred as a matter of law because "it does not fit within the narrow exception to the pre-1976 version of Louisiana's workers' compensation law that allowed negligence claims against executive officers...." (Rec. Doc. 101-1 at 6). Furthermore, TDPI contends that even if the Court does not find that this claim is barred, Cologne is unable to prove an essential element of the claim–that the executive officers had the requisite control of the thing that caused the harm. (Rec. Doc. 101-1 at 9). Lastly, TDPI argues that it is entitled to summary judgment on Cologne's claim for "concealment, misrepresentation, fraud." TDPI claims the Cologne is unable to establish that the executive officers acted with the requisite fraudulent intent.

On June 18, 2013, Cologne filed an Opposition to the Motion for Partial Summary Judgment. (Rec. Doc. 112). Cologne explains that he never alleged exposure to welding fumes during his employment at Texaco, Inc. Accordingly, he has no objection to the dismissal of such claims. Cologne also explains that while he did claim exposure to radiation in his complaint, he has chosen not to pursue such claim based on the discovery acquired in this case. (Rec. Doc. 112 at 2). With respect to the strict liability claim, Cologne argues that it is not barred as a matter of law. Furthermore, Cologne argues that he has produced sufficient evidence to meet the elements of a strict liability claim under Article 2317. Lastly, Cologne argues that he has asserted

sufficient evidence to meet the elements of a claim for fraud.

**III.    Law & Analysis**

    **A.    Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)). The Supreme Court has explained that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*  When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

    **B.    Exposure to Radiation and Welding Fumes**

TDPI claims that "Plaintiff either never intended to pursue or has abandoned the theories that his illness was caused by exposure to radiation and/or welding fumes."  (Rec. Doc. 101 at 1). Accordingly, TDPI asks the Court to grant summary judgment on these two theories of causation.  Cologne agrees that he "is not asserting claims against Texaco's executive officers for exposure to welding fumes or exposure to radiation." (Rec. Doc. 112 at 19).  In light of the

parties' agreement on this point, TDPI's motion for summary judgment is granted as to the theories involving exposure to radiation and welding fumes.

### C.   Strict Liability Under Article 2317

Before the 1996 Tort Revision, Article 2317 read: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."  LA. CIV. CODE art. 2317.  This created a strict liability cause of action against the custodian of a thing that caused harm to another.  TDPI argues that a cause of action under Article 2317 does not "fit within the narrow exception to the pre-1976 version of the Louisiana workers' compensation law that allowed negligence claims against executive officers...."  (Rec. Doc. 101-1 at 6).  The Court disagrees with TDPI's characterization of the pre-1976 Louisiana workers' compensation laws and finds it instructive to briefly examine the history of executive officer suits under those laws.

#### 1.   Pre-1976 Executive Officer Suits

Prior to 1976, the workers' compensation law provided that "[t]he rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations."  LA. REV. STAT. ANN. § 23:1032 (1964).  This Section was entitled "Exclusiveness of rights and remedies; employer's liability to prosecution under other laws."  *See id.*  As the Supreme Court explained, this statute created an "exclusive remedy against [a worker's] employer for compensable injury."  *Bazley v. Tortorich*, 397 So. 2d 475, 479 (La. 1981).  Accordingly, employers were immune from liability arising from tort suits.

In an attempt to sidestep the workers' compensation regime, plaintiffs began to bring

5

lawsuits directly against executive officers, rather than against the employer. At first the status of these executive officer suits was questionable and caused division among the circuit courts. However in *Canter v. Koehring Co.*, the Louisiana Supreme Court approved such lawsuits. 283 So. 2d 716 (la. 1973). In *Canter*, the Supreme Court reinstated and affirmed a district court's judgment in favor of plaintiffs and against the corporate employees of a deceased husband's employer. *Id.* at 728. In doing so the court resolved the conflict that had developed between the circuits. The court held that a breach of a duty owed by an executive officer or other co-employee to the employer could give rise to a cause of action in tort to a third person, namely another employee. *Id.* at 722 ("[T]he duty may be imposed upon the defendant solely because of the employment or agency relationship, but its breach may nevertheless make him individually liable for the harm thereby sustained by a third person (including a co-employee)..."). In reaching its decision, which paved the way for executive officer lawsuits, the majority opinion did not make any mention of the Louisiana workers' compensation laws.[2] The lack of such reference is consistent with this court's understanding that prior to 1976, workers' compensation laws did not apply to executive officers at all. The Louisiana Supreme Court, in *Canter*, did not carve out an exception to workers' compensation laws. Instead the court held that an employee could sue his co-employee for negligence, without even mentioning workers' compensation.

In a later decision, the Supreme Court, referencing *Canter*, explained that "the absence of

---

[2] Justice Summers took issue with this in his dissenting opinion. He recognized that "[t]he [workers' compensation] Act does not expressly state whether employees may or may not be sued in tort by their coemployees injured by their negligence." *Canter*, 283 So. 2d at 729 (Summers, J, dissenting). He, therefore, found it necessary to examine the spirit of the law, which in his opinion, cut against allowing executive officer suits.

a prohibition against tort suits against co-employees allowed injured workers to seek tort recovery from negligent executive officers and their liability insurers." *Bazley v. Tortorich*, 397 So. 2d 475, 479 (La. 1981). The Supreme Court also summarized the scope of workers' compensation law prior to 1976. The Court stated that pre-1976 "the workers' compensation statute provided that compensation was an employee's exclusive remedy against his employer for a compensable injury, leaving him free to pursue other remedies against third persons." *Id.* According to this interpretation, suits against executive officers were not part of a "narrow exception to the pre-1976 version of the Louisiana workers' compensation law," as Defendant suggests. Rather, the workers' compensation laws did not apply to suits against executive officers at all. Workers' compensation served as the employee's exclusive remedy against the employer, but it did not affect pre-existing remedies against other parties, like executive officers.

The Court finds additional support for this interpretation in *Louisiana Civil Law Treatise: Workers' Compensation Law and Practice*. 14 Wex Malone & H. Alston Johnson, III, *Louisiana Civil Law Treatise: Workers' Compensation Law and Practice* 194 (3d ed. 1994). Malone and Johnson describe executive officer suits as "a loophole of rather substantial proportions" which "gradually opened over the years…." *Id.* According to Malone and Johnson, one of the factors that made executive officer suits possible was "[t]he absence of a prohibition against tort suits against co-employees (a feature of many other compensation acts)...." *Id.* 194-195. Furthermore, they state that "[p]rior to the amendments in 1976, a co-employee was not immune from a tort suit and thus an action based on intent, or negligence, or *strict liability* theories, was cognizable against a co-employee." 14 Wex Malone & H. Alston Johnson, III, *Louisiana Civil Law Treatise: Workers' Compensation Law and Practice* 206 (5th ed. 2010) (emphasis added).

This interpretation becomes even more compelling once one examines the changes that

were made to the workers' compensation law in 1976.  *Id.*  As the Supreme Court explained in *Bazley*, the legislature realized that the employers were ultimately paying for executive officer suits through the provision of liability insurance to their executive officers and employees. *Bazley*, 397 So. 2d at 479 ("Although the legislative history is meager, accounts indicate that the amendment was enacted to provide employers relief from the cost of furnishing liability insurance to executive officers and other employees.") (citing 14 Wex Malone &  H. Alston Johnson, III, *Louisiana Civil Law Treatise: Workers' Compensation Law and Practice* 155 (2d ed. 1980)).  Therefore, in order to close the loophole and shield employers from the cost of tort suits, the legislature expanded the protection of the workers' compensation laws to explicitly cover employees of the employer.  LA. REV. STAT. ANN. § 23:1302, as amended by Act 147 of 1976, now reads:

> [T]he rights and remedies herein granted to an employee or his dependent on account of an injury...for which he is entitled compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages...as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury....
>
> B.  Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal...resulting from an intentional act.

LA. REV. STAT. ANN. § 23:1302.  The statutory language clearly suggests that prior to the 1976 amendment, suits against executive officers were not limited to negligence.  In § 23:1302(B) the legislature carves out liability for intentional acts and declares that it is not affected by this chapter.  In order for it to do so, such liability must have existed previously.

For these reasons, the Court finds that prior to 1976 an employee was allowed to sue an executive officer or co-employee under Article 2317 of the Louisiana Civil Code.

### 2. *Care, Custody, and Control*

While in theory, an employee was free to sue an executive officer under strict liability before 1976, in practice such lawsuits were rare. This is likely because, as the Court pointed out in *Patterson v. Radiator Specialty Co.*, it would be exceedingly difficult to prove that the executive officer had the requisite control. *See Patterson v. Radiator Specialty Co.*, No. 10-2007, 2012 WL 1565286, at *2 (E.D. La. May 2, 2012) ("Plaintiff has cited no case and the Court is unaware of one that finds executive officers having the requisite control to state a cause of action against them under art. 2317.").

"In an action asserting liability under La. Civ. Code art. 2317 before 1996, the plaintiff bore the burden of proving three elements: (1) that the thing which caused the damages was in the care, custody, and control (garde) of the defendant; (2) that the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) that the vice, ruin, or defect was the cause-in-fact of the plaintiff's damages." *Dupree v. City of New Orleans*, 1999-3651 (La. 8/31/00), 765 So. 2d 1002, 1008-09 (citing *Sistler v. Liberty Mutual Ins. Co.*, 558 So. 2d 1106 (La. 1990)).

Here, TDPI argues that Cologne is unable to prove the first element of the strict liability claim—that the thing which caused the damages (the tanks and other equipment at Paradis field) was in the care, custody, and control of Goslin and/or Nugent, the supervising employees at Paradis field.

In *Coulter v. Texaco, Inc.*, 117 F.3d 909, 913 (5th Cir. 1997), the Fifth Circuit explained that "Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives

9

some benefit from it." Similarly, the Louisiana Supreme Court explained that "[u]nder most circumstances ownership alone establishes the requisite benefit, control, and authority to find garde. *Doughty v. Insured Lloyds Ins. Co.*, 576 So. 2d 461, 464 (La. 1991) (citing *Fonseca v. Marlin Marine Corp.*, 410 So. 2d 674, 679 (La. 1981)). The Supreme Court explained that ownership creates a rebuttable presumption of custody. In order to determine if that presumption has been rebutted, the Court must examine whether a non-owner gained a benefit from the thing in question and had direction and control over it. *See id.*

The Court finds that no material issue of fact exists as to who had custody, or garde, over the equipment at Paradis field. Cologne does not contend that Goslin and Nugent were the owners of the tanks and equipment. Therefore, Cologne must prove that they exercised direction and control over the equipment and derived some benefit from it, in order to rebut the presumption that the owner of the thing maintained garde of it. Yet Cologne has put forth no evidence indicating that either Goslin or Nugent exercised direction and control over the equipment or that they gained some personal benefit from it. The only piece of evidence that Cologne cites in support of his claim that Goslin and Nugent had custody of the harmful equipment is his own deposition in which he identifies Goslin as the drilling foreman and Nugent as the production foreman at Paradis field during the time in question. The Court finds this insufficient.

It is implausible to think that two employees of an extremely large corporation, who did not hold a formal executive office, maintained enough direction and control over company-owned equipment to take on a quasi-ownership role with respect to that equipment. With no other evidence put forth by the Plaintiff, except for the titles and positions of the two co-employees, the Court finds that there is no issue of material fact. Cologne is unable to satisfy the

first element of a strict liability claim under Article 2317. For this reason, TDPI's Motion for Summary judgment is granted as to this claim.

### D. Fraud

Lastly, TDPI argues that it is entitled to summary judgment on Cologne's claim for "concealment, misrepresentation, [and] fraud" because Cologne fails to put forth any evidence that the executive officers had a fraudulent intent.

Both parties agree that in order to find fraud, Louisiana courts generally require a showing of: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information. (Rec. Doc. 112 at 11) (citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp 587, 598 (E.D. La. 1993)). Defendant also claims that a showing of "intent to defraud" is required. (Rec. Doc. 101-1 at 10) (citing *Stern v. Kreeger Store, Inc.*, 463 So.2d 709 (La. App. 4 Cir. 1985)). Even ignoring the intent to defraud element, and using only the test put forth by Plaintiff, the Court still finds that Cologne has failed to put forth sufficient evidence that Goslin and/or Nugent are guilty of fraud.

In his opposition to Defendant's Motion for Summary Judgment, Cologne provides an in-depth discussion of the information that was withheld. He describes expert testimony, literature, and correspondences, all indicating that during the time in question (the years of 1970 through 1976) many people were aware that benzene could cause dangerous sideffects in those individuals who were exposed to it. However, Cologne fails to put forth a single piece of evidence linking this information to either Goslin or Nugent. As to the third element, Cologne again cites his own deposition testimony to support his contention that Goslin and Nugent had a

11

duty to speak.  This may have relevance in the Plaintiff's negligence claim but it, alone, is not sufficient to establish a fraud claim.  Cologne simply reiterates that Goslin was the drilling foreman and Nugent was the production foreman at the time in question.  However, he offers no additional evidence regarding the relationship between these employees and himself.  Lastly, Cologne is unable to offer any evidence that either Goslin or Nugent personally benefited from the withholding of information regarding the dangers of benzene.  Cologne contends that "Texaco lowered its costs by not informing workers of the danger of benzene, or the need for monitoring."  (Rec. Doc. 112 at 17).  However, he offers no evidence to support a finding that Goslin or Nugent personally benefitted.  Cologne's only support for this assertion is an unsupported statement that "[a]s executive officers of this business unit, [] Mr. Goslin and Mr. Nugent's policies and procedures and decisions would have been driven by the corporations goals to reduce [cost]…."  The Court finds this statement insufficient to present an issue of material fact as to Goslin's or Nugent's personal benefit from the allegedly withheld information.

## IV.  CONCLUSION

For the forgoing reasons, IT IS ORDERED that Defendant's Motion for Partial Summary Judgment (Rec. Doc. 101) is GRANTED.


New Orleans, Louisiana, this 25th day of October, 2013.


_____
UNITED STATES DISTRICT JUDGE